IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JASON HYATT,

            Plaintiff,

    v.

PORTAGE COUNTY SHERIFF MIKE LUKAS,
CAPTAIN CORY NELSON and
SERGEANT DALE BOETTCHER,

            Defendants,

ORDER

16-cv-383-wmc
App. No. 20-1114

---

*Pro se* plaintiff Jason James Hyatt was granted leave to proceed in this lawsuit on claims that three officials with the Portage County Sheriff's Office violated his constitutional rights to access courts and equal protection by: (1) denying him timely access to his legal materials to prepare for a hearing on a motion to withdraw his plea in his criminal case; and (2) denying him access to a telephone or to make canteen purchases. On September 17, 2019, this court granted summary judgment to defendants and dismissed this case. (Dkt. #125.) On October 16, 2019, Hyatt filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), a motion for a temporary restraining order and preliminary injunction, and a renewed motion for assistance in recruiting counsel. (Dkt. ##133, 135, 136.) On January 21, 2020, Hyatt also filed a notice of appeal (dkt. #158), and later ,on February 28, 2020, he filed a motion to proceed *in forma pauperis* on appeal (dkt. #170).

       With sincere apologies for this court's delay in resolving Hyatt's post-judgment motions, the court must deny Hyatt's motions to alter or amend, for a temporary

restraining order and for assistance in recruiting counsel, but will grant his request to proceed *in forma pauperis* on appeal.

OPINION

Under Rule 59(e), a court may only (1) consider newly discovered material evidence or intervening changes in the controlling law or (2) correct its own manifest errors of law or fact to avoid unnecessary appellate procedures. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006) 546 (citing *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n.3 (7th Cir. 2001). A "manifest error" occurs when the district court commits a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (internal quotations and citations omitted). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro*, 91 F.3d at 876.

In his post-judgment motions, Hyatt maintains that he was unable to prepare his motion to alter or amend because he did not receive adequate access to the law library and legal materials. In particular, Hyatt represents that even though he had access to the law library to prepare his motion to alter or amend, that access was insufficient. Of note, Hyatt raised similar concerns in a previous motion for a temporary restraining order filed during the dispositive motion phase of this lawsuit, which the court already addressed head-on in its opinion and order granting defendants' motion for summary judgment:

> In his 13-page motion, Hyatt claims that various Waupun employees have been thwarting his ability to access the courts

2

> by refusing legal loans, requiring him to make co-payments for his medical needs, and forcing him to take a low-paying job that requires him to work 40 hours a week for pay that will likely be taken from him to pay other debts.  These complaints have been a consistent refrain throughout Hyatt's current lawsuit, but they are unsubstantiated and at this point ring hollow.  Indeed, Magistrate Judge Crocker has looked into Hyatt's claims that defense counsel or prison staff have been preventing him from litigating this claim, and concluded in the negative.  (*See* dkt. ##86, 110.)  Hyatt's filings show an understanding of the relevant legal principles, but it appears that he believes seemingly typical constraints that come with incarceration amount to inadequate access to the court.
>
> Even setting aside the merits of certain of his complaints, Hyatt seems unable to appreciate the obvious contradiction in his making those complaints while being given access to dozens of pages of paper and postage to file his grievances with this court.  What is more unfortunate is that Hyatt appears intent on spending his time preparing complaints about the limitations on his ability to litigate his claims, rather than preparing substantive arguments and gathering evidence to support his claims.  Regardless, it is not a reason to conclude that he is entitled to any sort of injunctive relief in this case.

(9/17/2019 Order (dkt. #125) 12.)

Although he acknowledges receiving access to the law library for 30 hours to prepare his pending motion to alter or amend, Hyatt now insists that he lost a large portion of his work because the computer he was using crashed, preventing him from adequately explaining how Judge Crocker was incorrect in finding that he had adequate access to the resources he needed to respond to defendants' motion for summary judgment.  As proof, Hyatt attaches portions of the merits-based motion to alter or amend that he was purportedly preparing, as well as motions in preparation for this and another lawsuit, also raising concerns about adequate access to the law library and his materials to meet deadlines.  (*See* dkt. ##133-1, 133-2, 133-3, 133-4, 133-5.)  Unfortunately for Hyatt,

none of those submissions suggest that he was driving towards identifying a manifest error of law or fact in the court's original opinion and order on summary judgment, nor that Hyatt is entitled to any other relief from this court.

For example, in his draft motion to alter or amend alone, which is 16 pages single spaced, Hyatt raises at least *18* challenges to the court's opinion and order.[1] Yet while Hyatt carefully dissects the court's recitation of the facts (thus, demonstrating a clear understanding of the record), none of the "errors" identified suggest a manifest error of law or fact that would justify this court vacating its judgment in defendants' favor or take any further action.

1.  Hyatt challenges the court's statements in a footnote related to its consideration of his responses to defendants' proposed findings of fact, faulting the court for not considering Hyatt's injection of additional, unsubstantiated statements in his responses. However, as repeatedly explained during the course of multiple lawsuits, the court cannot consider Hyatt's averments related to events that were obviously beyond his

---

[1] Hyatt's other attachments relate to his perceived inability to litigate this case. Hyatt details his (1) mental health challenges, (2) insufficient access to the law library and paper, and (3) lack of understanding of the applicable standards. Hyatt also attaches the *22*-page single-spaced motion he filed requesting an enlargement of time to complete discovery, elaborating at length on his interactions with various prison officials between when he received the court's summary judgment opinion and when he submitted his request for additional time to complete discovery. (Dkt. #133-5.) Again, the court simply cannot reconcile Hyatt's repeated, lengthy and detailed assertions about his claimed inability to litigate this case with an *actual* inability to do so. The court's orders detailed the relevant legal standards, and the court provided Hyatt with materials that would help guide his prosecution of his claims in this court. Yet Hyatt *still* has not come forward with any *specific* explanation for why he was unable to respond with relevant legal and factual analysis to defendants' motion for summary judgment in greater detail than he provided in his declaration and response to defendants' proposed findings of fact. To the contrary, the fact that Hyatt can provide such granular details about the hours he was able to spend in the law library suggests that he is fully capable of tracking facts and making legal arguments, but has chosen not to do so.

sphere of personal knowledge. In any event, Hyatt does not identify how the court's consideration of his unsubstantiated responses led the court to make any errors of law or fact. Instead, he claims that his inability to cite documentary evidence in support of his assertions was a reason to recruit counsel. Again, for the reasons already explained multiple times in this lawsuit, the court disagrees.

2. Hyatt faults the court's discussion of his use of the grievance process in the recitation of the facts. While defendants raised exhaustion as a ground for summary judgment, the court declined to address that defense and instead resolved defendants' motion on the *merits* of plaintiff's claims, making this a wholly moot point. (Dkt. #125, at 11.)

3. Hyatt further takes issue with the court's statement that two phones were available to inmates inside each cell block for 15 hours a day, asserting that this is "patently false." However, Hyatt's main focus in this lawsuit has been his inability to access phones *outside* the cellblock. Regardless, he does not identify how the court's observation about the number of phones available in the cell block impacted its conclusion that Hyatt had not shown that he was denied access to the telephone *by defendants in an effort to single him out* for mistreatment nor even how this observation impacted the court's analysis of his access to courts claim.

4. Hyatt challenges the court's statement that inmates were allowed to call "anyone they wanted, including friends and family members, as well as employers," (dkt. #125, at 3), arguing that inmates did not have such *easy* access to the phones, given the price of phone calls, which was $1.00 per minute, the logistical challenge of finding the

5

correct phone number for family members, and the technical challenge posed by the phone system that did not allow him to leave messages for the people he called. With respect to his Fourteenth Amendment equal protection claim in particular, Hyatt now appears to suggest that this amount to differential treatment based on his indigency. But, the essence of Hyatt's argument is a challenge to the court's original, June 14, 2018, leave to proceed order, which explicitly denied him leave to proceed on a First Amendment challenge to the cost of phone calls. (6/14/2018 Order (dkt. # 27) 5.) Regardless, Hyatt neither identified an error in the court's analysis at screening, nor has he come forward with evidence suggesting that the fee was unfairly applied to him, as opposed to other, similarly situated inmates.

5. Hyatt next objects to the court's note that the jail did not have a written policy setting forth which officials would decide whether an inmate had access to the jail staff's or social worker's phone, claiming that this was irrelevant, since he was contending that jail staff told him *he* was not allowed to use the phone. In particular, Hyatt claims that he was unable to gather evidence that defendants Lukas or Nelson directed staff not to allow his use of the telephone. Even so, Hyatt did not deny that he still had access to the cellblock telephone. Moreover, the court accepted as true Hyatt's assertion that on one occasion he was denied access to the jail staff's phone while trying to call his family about an upcoming criminal hearing. (Dkt. #125, at 18-19.) However, the court *also* observed that Hyatt failed to detail what he explained to jail staff about his need to use the phone, which was significant, since jail staff typically allowed inmates to use the jail staff's or social worker's phone in the case of an emergency only. (*Id.*) Thus, Hyatt still

has not shown that any of the individual defendants singled him out for mistreatment by denying him access to the phone during an emergency.

6. Hyatt also challenges the court's observation that he did not come forward with evidence about particular interactions with jail staff to prove his claim that Sheriff Lukas or Captain Nelson instructed staff to deny him access to the jail staff phone. Here, Hyatt claims he *did* submit such evidence: his statements in his deposition that he was told by correctional officers that they had to "run everything by the captain or the sergeant, captain, sergeant," and that any jail employee ranked lower than those positions lacked discretion to make decisions about phone use. (Hyatt Dep. (dkt. #82-2) at 129-30.) However, Hyatt still has not directed the court to evidence of an actual instance in which one of the individual defendants denied him use of the phones for an emergency, which is the only basis on which he could show differential treatment.

7. Hyatt points to the court's observation that his two comparators for equal protection purposes were not sufficiently similar because he did not submit evidence suggesting that the subject matter of these other inmates' phone conversations were of the same level of urgency as his. Hyatt now claims that the court should have recruited him counsel on this point, since he was unable to locate the comparators to gather information about the nature of their emergency phone calls as compared to his own. Again, however, Hyatt has not grappled with the fact that he did not, and still has not, submitted evidence of what *he* told jail staff about the urgency of his need to call his family. (*See* dkt. #125, at 19.) As such, there is no basis to infer that he was being mistreated with respect to the

7

informal policy allowing inmates to use the jail staff's and social worker's phones for emergencies only.

8. Hyatt further points to the court's observation that his account was "frozen," despite his later being allowed to order from the canteen. Hyatt does not explain how this fact, even if true, is material to the court's analysis.

9. With respect to Hyatt's access-to-courts claim, he now claims that his response to one of defendants' proposed finding of fact regarding other inmates' treatment -- "Not disputed; i.e., Plaintiff cannot presently confirm or deny if other inmates were suing, or whom" -- was actually a clerical error, and he meant to dispute those facts because it is better to dispute a fact if there is any uncertainty. Again, this is not a basis to disturb the court's finding that no evidence suggested defendants prevented Hyatt from adequately preparing for his motion hearing.

10. Hyatt further challenges the court's supposed framing of his allegation that he was unable to purchase more envelopes from the canteen as an equal protection claim, rather than a facet of retaliation and access to courts claims. Hyatt elaborates that he was unfairly required to provide and pay for his own envelopes, the financial burden of which should have fallen on jail officials, not him, arguing that requiring inmates to pay for their own envelopes and limiting access to paper reflects defendants' effort to frustrate inmates' access to the courts. Still, Hyatt points to no evidence suggesting that his inability to purchase more envelopes posed a material barrier to him pursuing his motion to withdraw his plea. And to the extent Hyatt believes that the court should have allowed him to proceed on a retaliation claim related to his access to legal materials, he did not ask the

court to reconsider its order characterizing his canteen access claim under as an equal protection claim, nor does he explain how the *individual defendants* took retaliatory action against him.

11. Hyatt further appears to argue that his failure to submit evidence of being treated differently than other inmates was a product of confusion during his deposition. However, he does not link his alleged to confusion to an inability to come forward with evidence of his *own* claims of intentional mistreatment, nor explain why he did not at least come forward with evidence at summary judgment. Again, Hyatt's primary problem in this case was his failure to provide any details about *his* alleged mistreatment, while his failure to provide specific evidence about how other inmates were treated more favorably was just an additional reason that his equal protection claim failed.

12. Hyatt now appears to complain about the conditions of his confinement at the Portage County Jail, although it is unclear if he is doing so for comparison purposes only. Regardless, this is the first point that Hyatt raised his conditions of confinement at the jail as a factor contributing to his inability to access the courts, and he does only by vague references to suffering from eczema, requiring a snack bag, needing a haircut, and being physically and mentally ill. Even if not waived, Hyatt again fails to explain how the conditions of his confinement actually *prevented* him from effective access to the courts.

13. Hyatt next challenges the practice of "retracting canteen orders already ordered and deducted/paid for," but acknowledges that he did not submit evidence establishing that such a practice exists. He nonetheless faults defendants for their "conclusory denials" of such a practice, and accuses the court with inappropriately taking their side. However,

at summary judgment, it was Hyatt's burden to prove the existence of such a policy *and* the disparate treatment with respect to his canteen purchases. Hyatt would now further challenge the manner in which defendants deducted money from his account to pay towards his filing fee, but those deductions are not a part of this lawsuit -- all that was relevant to his equal protection claim was the fact that his account was frozen (for at least some period of time) due to his outstanding debts.

14. With respect to the ruling on Hyatt's court access claim, this court accepted as undisputed that defendant Nelson determined Hyatt's banker's box of legal materials posed a fire hazard, as well as safety and security risks. Yet Hyatt appears to claim that defendants actually admitted the opposite, pointing to defendants' answer to his amended complaint, denied that Nelson and Boettcher "said that Plaintiff's box of legal materials presented a fire hazard as a pretense for denying Plaintiff his legal materials." (Dkt. #33, ¶ 7.) However, defendants actually denied that the justification was a *pretense*, not the justification itself.

15. Also with respect to his access claim, Hyatt parses the court's factual findings as to when he was able to possess all of his legal materials exactly, reasserting that defendants consistently promised him access to all of his legal materials, but failed to provide them until the day of his plea withdrawal hearing. However, the court not only found that he had access to all of his materials the day of his hearing, but further found based on the record of the motion hearing itself, that Hyatt *successfully* articulated his theory that his plea had not been voluntary and was still denied the opportunity to withdraw his

plea. Thus, there is no basis to conclude that Hyatt was prevented from litigating his motion to withdraw his plea because he had limited access to all of his legal materials.

16. Hyatt similarly claims that the court misstated his basis to move to withdraw his plea -- that he was mentally impaired due to being held in solitary confinement -- when in fact, Hyatt raised multiple grounds. However, Hyatt did not and still does not elaborate these other grounds. Hyatt also appears to claim that one of his former attorneys lacked diligence in handling his motion to withdraw his plea, yet another issue that Hyatt did not raise previously *and* which is unrelated to his access-to-courts claim in this lawsuit.

17. Hyatt also claims that the court should not have considered his deposition testimony as evidence, since he was unrepresented during his deposition *and* taking medication that impacted his ability to recollect facts. Still, Hyatt admits that he was able to tell the truth during his deposition, and that he had the opportunity to submit additional facts in opposition to defendants' motion for summary judgment -- either in the form of documentary evidence or a declaration supplementing any vague testimony from his deposition. Thus, once again, Hyatt's concern about the quality of his testimony during the deposition itself is not a basis for the court to alter or amend its judgment in defendants' favor.

18. Hyatt again argues that during the course of *this* lawsuit, he lacked adequate access to resources, detailing his inability to meet the court's deadlines to amend his complaint due to his transfer into the DOC system and his placement in restrictive housing, which left him with very few resources. However, Hyatt successfully submitted an amended complaint, and the record of this case shows that Hyatt received a total of *five*

extensions of time to meet deadlines in this lawsuit; plus, the court responded directly to his concerns about adequate access to legal materials. (*See* dkt. ##10, 13, 15, 60, 86.) Finally, as discussed already, Hyatt's claimed inability to litigate this case is belied by his lengthy and detailed filings to date.

Although not exhaustive, this brief review of the principal arguments in Hyatt's lengthy and detailed draft motion to alter or amend illustrates that he is able to point to *no* manifest error of law or fact that requires correction. To the contrary, Hyatt persists in his undeveloped theory that he lacked adequate resources and law library time to litigate this case, rather than articulate with *any* degree of specificity, what additional resources he needed to oppose defendants' motion for summary judgment (beyond recruited counsel), much less what were the basis of his claims that he was denied the opportunity to address. Certainly, Hyatt has not demonstrated an *inability* to litigate this case; he is quite capable, but unfortunately has become subsumed by perceived wrongdoing at the hands of prison staff, defense counsel and the court that prevented him from pursuing his still unarticulated claims for denial of equal protection and access to courts. In doing so once again in his latest motion, the court remains convinced that recruitment of counsel or allowing Hyatt to reopen this case is not a solution to Hyatt's failure to demonstrate the underlying merits of any of his claims. Accordingly, the court will deny his motions to alter or amend, for a temporary restraining order, and for recruitment of counsel.

That said, the court will grant Hyatt's request to proceed *in forma pauperis* on appeal, since he appears unable to prepay the full appellate filing fee from the financial information that Hyatt provides (dkt. #171). *See* 28 U.S.C. § 1915(a)(3) ("An appeal may not be

taken *in forma pauperis* if the court certifies in writing that it is not taken in good faith."). Under § 1915(b)(1), Hyatt must make an initial partial payment of the appellate fee, which the court has calculated as $41.78. Hyatt may have until **May 10, 2021,** to make the initial partial payment by check or money order. If necessary, he may also arrange with prison authorities to pay some or all of the amount from his release account. **If he fails to make the required payment by that date, the appeal may be dismissed.** Plaintiff must pay the remainder of the $505 appellate filing fee in monthly installments under 28 U.S.C. § 1915(b)(2).

ORDER

IT IS ORDERED that:

1. Plaintiff Jason Hyatt's motions to alter or amend judgment, for a temporary restraining order and for assistance in recruiting counsel (dkt. ##133, 135, 136) are DENIED.

2. Plaintiff's motion for leave to proceed *in forma pauperis* on appeal (dkt. # 170) is GRANTED.

3. No later than **May 10, 2021**, Hyatt shall submit a check or money order made payable to the Clerk of Court in the amount of $41.78 as an initial partial payment of the docketing fee for his appeal. Thereafter, Hyatt shall pay the remainder of the $505 appellate docketing fee in monthly installments according to 28 U.S.C. § 1915(b)(2). If Hyatt does not have the money to make the initial partial appeal payment from his regular

13

account, he will have to arrange with prison authorities to pay some or all of the assessment from his release account.

4. **Hyatt is advised that if he fails to make the initial partial fee payment as directed, the clerk's office will alert the Seventh Circuit, which may result in the dismissal of his appeal.**

Entered this 19th of April, 2021.

                                BY THE COURT:

                                /s/
                                _____
                                WILLIAM M. CONLEY
                                District Judge